And we will move to the last case we argue today, and that is in Re Schaefer Salt Recovery. Yes, come on. It's Mr. Palanga? Yes, it is, Your Honor. Okay, great. Good afternoon. Stephen Palanga for the appellant, Carol Siegel. May it please the Court, I'd like to reserve two minutes for rebuttal. Two? Granted. Okay, Erica. Thank you. We're here today seeking the reversal of the district court's order affirming a bankruptcy court decision that denied the award of sanctions for a bad faith bankruptcy petition pursuant to Rule 9011 of the Bankruptcy Rules. Why did the district court find Rule 9011 to be inapplicable? Well, Your Honor. Is it a time issue? I believe, Your Honor, the district court looked at the Nicola decision, which was a Third Circuit decision that was not selected for publication. It was an appendix decision. But the bankruptcy court relied on the Nicola decision in deciding that the application for sanctions was untimely. And the Nicola decision extended the supervisory rule, the Third Circuit supervisory rule, to bankruptcy cases. Well, shouldn't it be – let's get to that basic thing. Is there any reason why the supervisory rule shouldn't apply across the board unless one of the exceptions applies? Well, Your Honor, I do – we do believe there is one exception, perhaps. Then the answer is yes, but this is an exception. Yes, and if I could also maybe make it clear, the Nicola decision on its face indicates that an application for sanctions in a bankruptcy case needs to be filed between the time that the order dismissing the case is entered and the time it becomes final under the Bankruptcy Rules for Appeals, which is a 10-day period, a relatively short period. That's what the Nicola case says. Okay, and the motion for sanctions was filed within – as I read the record, was filed within 10 days after the order dismissing. I don't think that's what Nicola says. Nicola says it has to be filed before the entry of final judgment, not within the 10-day period before – within which you can file an appeal. Well, actually, Nicola doesn't say that. Nicola says that after the order is entered by the Bankruptcy Court dismissing the case, then the 10 days begins to run. The 10 days for appeal, but not the 10 days for filing sanctions, because in Nicola it was 6 or 7, I can't remember, or 9 days, after the entry of final judgment they found it was out of time. Actually, in Nicola, Judge Barry, what the court found was that the appellant in that case had filed an application of sanctions 6 days after the 10-day period to appeal had run. So they were 16 days late, not 10 days late. The difference – and this is why it's not a presidential opinion. This is why it probably wasn't as carefully done as it could have been. But there is some confusion as to the 10-day period in Nicola. But subsequent cases to Nicola make it quite clear that you have to file it before, at least in the context of the rules in which we've already dealt, which is Rule 11 and, you know, let's say – Inherent. Inherent power within – you know, before final judgment is entered. The motion has to be filed and presumably decided. Correct? Well, Your Honor, this was, to my understanding, the Nicola decision was the first time that, and Sarah was directly applied to bankruptcy cases. And what we set forth in our papers is there is a little bit of a difference in a bankruptcy case from a district case. The most important significance is that the filing of a bankruptcy case imposes an automatic stay. And that was what was at play in this case, Your Honor. My client was in the process of foreclosing tax lien certificates, and it was a lengthy process that had taken many, many years. The debtor in this case and its attorney, Mr. Cederi, who was sanctioned by the court as well, was seeking to intervene in those foreclosure actions, and basically to try to trump my client from getting to final judgment. In a tax in rem foreclosure action, when a final judgment is entered, the title is immediately divested and it becomes – But neither the bankruptcy court nor the district court used that as a basis for deciding these motions. Actually, Judge Winfield granted the motions under 1927. Correct. Judge Winfield chose to grant sanctions ultimately under 1927. Which she then took back. Which she then took back, but indeed she was patient. Is that how you pronounce the word? Because there are any number of cases since that time, and even before, that permit sanctions for bad faith conduct that would be untimely under our supervisory rule under 28 U.S.C. 1927, including one just 2006, the Tenth Circuit has decided. Because of the differences between Rule 11 and why we oppose the supervisory rule and 1927. That's a pretty strong argument, I think, for you to be making. Absolutely, Your Honor. Again, my client was comfortable with the judge's ultimate decision that sanctions were appropriate, whether they awarded them under Rule 11. Well, not the ultimate decision. You mean the intermediate decision. The intermediate decision that we thought was the ultimate decision initially, that sanctions were appropriate in this case. And in fact, as Judge Barry pointed out, Judge Winfield believed this case cried out for sanctions. She entered a decision that sanctions should be awarded. We filed a certification of counsel fees. And then for decisions that are unknown exactly, the order was not entered for a number of months. And we had inquired, after we had inquired, then Judge Winfield issued her opinion, basically reversing her earlier decision. Well, I can understand that at that point in time, there was reason to believe that we were going to apply the supervisory rule across the board to any kind of an application for sanctions. And we may still do it. We may still do it. We have not in a precedential opinion said that an untimely meeting after the entry of final judgment would be a problem under 1927. That's correct, Your Honor. And I did point that out in my motion for reconsideration before Judge Winfield. But I did want to— Well, you never moved for sanctions under 1927. You moved under 1901 and under— The courts inherent power. The courts inherent power.  Is there, under your view of this case and of the rules, is there a period within which the motion should be filed? In my mind, the Nicola decision sets forth an appropriate period of time. When you're moving on a motion to dismiss— Well, there's some question, according to Judge Barry, what the Nicola decision holds. What would you say? The issue here is that I think bankruptcy practitioners certainly could live with the Nicola standard, which is that 10-day period. Because in a motion to dismiss, with the stay in effect, you want to get that case dismissed as quickly as possible. We're talking about a time span of a number of about two weeks between when we filed the motion and when we had it heard. The concern is having a sanctions application possibly holding up the ultimate adjudication of whether that case was a bad faith filing. So I think if the court allows that reason— The Nicola decision allows that period, at least in bad faith filing cases. The rules, 9011, specifically carves out, from the 21-day safe harbor provision, motions to dismiss for bad faith filing. So there is some precedent in the rule itself to treat motions to dismiss for bad faith filing differently from other types of rules. And that's why the Tenth Circuit opinion is particularly instructive, because it says it explicitly rejected the supervisory rule as adopted in the Third Circuit, explaining that unlike Rule 11, the application of 1927 may become apparent only at or after the litigation's end, given that the 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied. Let me ask you a question. You wrote to Mr. Kudari that Siegel intends to seek sanctions against you and or Schaefer-Salk for this frivolous and bad faith Chapter 7 petition unless you arrange for the immediate dismissal of this case. And didn't they arrange for the immediate dismissal of the case? Well, Your Honor, it wasn't immediate. They didn't agree to the dismissal, and that's another issue in the brief, until the morning of the hearing when they wrote a letter. Mr. Kudari didn't even appear in court. He basically suggested to the court that he would consent to a dismissal. Because of his medical condition? Correct, Your Honor. But as we pointed out in our papers, and I don't believe it's necessarily relevant, that day he filed papers in the state court seeking to intervene. He said they were already prepared. I recognize that, Your Honor. So you think you're still entitled to the sanctions? Absolutely, Your Honor. That's why we're here. I believe I'm out of time. Okay, thank you. We'll get to him. Good morning, Justice. Good morning. I think, Your Honor. You have to start with your name. Nicholas Kadir. Pardon? My name is Nicholas Kadir. You've got to speak up. All right. Go ahead. Speak up. Okay. I think Your Honors have basically hit the nail on the head. What he's asking is a complete overruling of the testament. I can't hear you. I'm sorry. And I have good hearing. Go ahead. You have to talk a little louder. Okay. I will. Certainly, pensaria applies, and this bright-line rule would be exactly what the court wants. It's a supervisory rule. And there is no doubt about it. When Judge Winfield reviewed her own response, she recognized the fact that the Third Circuit would basically not commit and would be overruled by the federal court if she entered a sanction. What do we do with people who are playing tricks like you in the court? Okay. Let's do it this way. The letter that I submitted was two days after I had the surgical procedure and seven days after the filing of the bankruptcy. What did you file it for in the first place? I filed it because I felt that I could liquidate the asset. The mortgage, it would have been a liquidatable asset. The trustee would have been willing to sell it. It's worth a couple hundred thousand dollars. And just to give Your Honors a perspective as to the effect of the seven days that this occurred, this is four years later. We're still litigating. He still does not have marketable title. And this matter is still just proceeding in the courts. So that seven-day window is not as dramatic as you might want it to sound. That being said, I think I don't need to reiterate Judge Hayden's opinion because I'm certain Your Honors reviewed it. Well, this court has held in a precedential opinion, Schering versus Vittering, that the supervisory rule doesn't apply after the plaintiff voluntarily dismissed the action. Actually, Judge, can I respond to that? No. I didn't ask the question. That wasn't the question. You can respond as soon as I ask the question. The district court told, the back of the court said, this will be a voluntary dismissal. And then said afterwards, this is an involuntary dismissal. So why shouldn't Schering apply? Now you can answer. Okay. I believe Judge Hayden basically found that it was an involuntary dismissal. And that is because it was premised upon an application by Sherwood Group associates. The order entered. Because it was a dismissal and a motion to dismiss. Correct. That's what she said. And as a result, I'd also further argue that a Schering exception probably does not even apply because of that very fact. I'm not sure I agree with Judge Hayden. I'm not sure I agree with Judge Winfield that it wasn't a voluntary dismissal. But clearly what it was was a consent to dismissal. Yes, Your Honor. So what's the real difference? Well, I consented to a dismissal. Yes, you did. You consented to a dismissal. On that day. So one of the purposes, or the main purpose, for the supervisory rule was to prevent piecemeal appeals. It's not going to be an appeal from a consent to dismissal. Well, actually, Your Honor, there was a hearing held where additional relief was granted. A 180-day stay was granted that I could not file another bankruptcy claim. That was the sanction. That was a sanction. Because that was a bar because of your bad faith. That was her bad faith finding. Even though she didn't say it explicitly. That was it. You can't mess around for 180 days. Because that's what she thought you were doing, and she made it very clear. Okay, but doesn't that fall into the concept of a hearing and a decision exceeding the voluntary consent feature? No, but the whole purpose of Pensiero is to make sure that people promptly file any sanction motion. And as I understand, Sherry, it says, well, if you have voluntarily dismissed, and really have no notice, they can't have filed the motion for sanctions before that, if you come into court on that day and say we voluntarily dismissed. So you have to give them, even under Pensiero, you should give them a little time so that they can file it promptly. He suggests 10 days. That's not unreasonable. So that if there's going to be an appeal, it all goes up at the same time. Why shouldn't Sherry then, whether you say it's because you consented, or whether it was a voluntary dismissal, I'm not sure they're different, why shouldn't it be sanctionable? Well, at the very least, Your Honor, the dismissal was within the 28-day safe harbor provisions of the latter. So that just says you could, all you're telling us is you had the right to voluntarily dismiss. Let's assume you had the right to voluntarily dismiss, but why shouldn't Pensiero and Sherry apply? I mean, really, Sherry. Why shouldn't Sherry apply? I mean, let's assume. Nobody's sanctioning you for voluntarily dismissing. The sanction is for bringing a bad faith section 7 action. Title 7. The Sherry decision does not apply, because in reality, if it wasn't for my health condition, and if it wasn't for the fact that I had this 28-day letter, I would have had the opportunity to potentially resolve this matter. Well, you never moved to withdraw your consent to dismissal because you had been ill. I mean, you never moved to reconsider. You know, after, I'm sorry, I inadvisably agreed to consent to dismissal because I was in the hospital. And now that I'm back, I ask you to reconsider and to reopen the matter. You never did that. I decided that it wasn't practical use. I said before, the 180-day bar is a sanction. That's not been briefed, but you know, that was actually a sanction. That was imposed with the dismissal, wasn't it, when you think about it? And one can say that the subsequent sanctions just amended the earlier grant of sanctions, which prevented you from filing any more petitions for 180 days. But there was nothing pending requesting a sanctions award. Well, that's the question. Whether the request for the sanctions order, which was filed nine days, I think, after the dismissal, was timely under an exception to Pansiero. And I guess what they're asking for, I think, well, there's a ton of speech. Of course, yeah. Of course. I don't know how Your Honor would get around the fact that that 10-day structure is merely just an analogy to Rule 8002, which is the 10 days to file an appeal. Yeah. Well, 10 days is a reasonable period. But why do you even – we don't even have to get into the 10-day period if we follow the cases, including several in district courts within the Third Circuit, that say sanctions can be awarded under 1927 even though there's a final judgment, even though a final judgment has earlier been entered? We don't even have to get into whether it's nine days, 10 days, 60 days. But you wouldn't want to. Why wouldn't 1927 apply? 1927 says, any attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost expenses attorney's fees reasonably incurred because of such conduct. Bad faith. Bad faith. But 1927, Your Honor, if it was a bad faith, then I would be least entitled to the safe harbor permissions. That's not 1927. No. There's no safe harbor in 1927. 1927 comes afterwards, after you've done all the bad things. Well, okay. Do you have anything else to tell us? No. Okay, thank you. Do you have, Rebecca? Okay. I just wanted to clarify for the record that the safe harbor that Mr. Caderi refers to under 9011 does not apply to motions to dismiss bad faith petitions. On its face, it is a carve-out from the safe harbor petition. So he did not have a 21-day period of time to decide whether he was going to dismiss the case or not to avoid a rule 11 sanction. Do you think we should apply Pensiero to 1927? We never have in this circuit, in this court. I don't believe so, Your Honor. I believe, again, when Judge Winfield chose to exercise 1927 and award sanctions under that section, we were content because we felt that the awarding of sanctions was what we were looking for. Well, didn't you get the sanctions by the 180-day conclusion? That's technically not a sanction. Well, with all due respect to Judge Barry. It was just a brilliant idea. It is sanctionable. Actually, it's derived from the code itself. There are certain provisions in the code where you can get something called prospective relief, and it happens in bankruptcy cases, and it happens in abuse cases. The bankruptcy courts will, upon a showing of abuse, order that no further filing is going to occur for 180 days. And abuse is equivalent to bad faith? Not always.  I think that can also result in a 180-day borrower. So it's technically a sanction, but not necessarily. Well, there was no question, though, from the record here that this was meant, that there was a bad faith finding. Correct. And there's no question that Judge Winfield ultimately determined that sanctions were a violation. And that Judge Hayden agreed with that. Correct. That's not on appeal. The issue is the timeliness of the application, and we do believe the application was timely. If you follow Nicola to its letter, it was timely. What do you think we should do? You should remand to the district court, which would then remand to the bankruptcy court, for an award of sanctions. Was the first award of sanctions a monetary one? We submitted a certification of counsel fees, Your Honor, to Judge Winfield, which was intended to be for the cost of my client. Did she enter that the first time? No, she did not. She didn't. What you would probably want, and I don't want to put words in your mouth, you would probably want a remand for purposes of reinstatement of the earlier order and a quantification of the attorney's fees that she found were reasonable. Absolutely, Your Honor. When you filed your motion for sanctions, was the dismissal still being called a voluntary dismissal? In our mind, it wasn't called anything other than that, Your Honor. When was it first called an involuntary dismissal? After we moved for reconsideration. After Judge Winfield reversed herself, she said, I really didn't mean it to be, I meant it to be not voluntary. So that when you filed your motion for sanctions, to all extent, purposes, it was a voluntary dismissal? It was an essential dismissal. It would fall under Shearing? That's correct, Your Honor. But also under Nicola, we were also timely as well. Yeah, but what's interesting, in Mr. Goddari's letters, both of September 13th and October 11th, he refers to it as a voluntary dismissal. Correct, Your Honor. Correct. Three and four times in each letter. And Judge Winfield, in the record itself, she says at the end, I'll take the voluntary dismissal, I'll issue my own order. We had submitted an order, she issued her own. She ultimately did indicate we had filed the motion, but I think we all, at the time, believed it was voluntary. Thank you. Thank you very much. We will take the matter under advisement, and Erica will do her...